# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CHRIS MCALARY<br><br>                    Appellant(s)<br>vs.<br><br>CASH CLOUD INC; & OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS<br>                    Appellee(s) | Case No.: 2:23-cv-01424-GMN<br>Appeals Reference No.: 23−19<br><br>(Consolidated With)<br><br>Case No.: 2:23-cv-01427-GMN<br>Appeals Reference No.: 23−20<br><br>BK Case No.: 23-10423-mkn<br>Chapter: 11 |
| CHRIS MCALARY<br><br>                    Appellant(s)<br><br>vs.<br><br>CASH CLOUD INC; & OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS<br>                    Appellee(s) | |

On Appeal from the United States District Court for the
District of Nevada
Case No. 23-10423-mkn
The Honorable District Court Judge Mike K. Nakagawa

---

## APPELLANT'S OPENING BRIEF

---

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
NATASHA SHARMA, ESQ.
Nevada Bar No. 16320
Telephone:  (702) 685-4444
*Counsel for Christopher McAlary*

*Attorneys for Appellants*

i

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Appellee Cash Cloud Inc; Dba Coin Cloud is both a corporate entity and the only debtor in this case. *See* Fed. R. Bankr. P. 8012. Additionally, there is no such parent corporation or publicly held corporation that owns 10% or more of Cash Cloud, Inc.'s stock.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>**TABLE OF CONTENTS**</u>

I.   JURISDICTIONAL STATEMENT ....................................................1

II.  ISSUES PRESENTED AND STANDARD OF REVIEW .......................1

III. STATEMENT OF THE CASE ......................................................3

    A.    The Bankruptcy Filing, the Litigation Claims and Cole Kepro's Service as Co-Chair of the Unsecured Creditors' Committee....3

    B.    The Retention of Professionals, Interim Fee Procedures, Interim Fee Statements, and Additional Administrative Claims............4

    C.    The Amended Plan Process .................................................7

    D.    Debtor's Monthly Operating Reports Reflect Millions in Losses and Millions in Professional Fees ..............................................9

    E.    Other Matters ....................................................................9

    F.    McAlary's Objection to the Amended Plan.............................10

    G.    McAlary's Appeals of the Confirmation Orders .....................11

IV.  SUMMARY OF THE ARGUMENT...............................................11

V.   ARGUMENT....................................................................................12

    A.    The NVBC Erred in Confirming a Plan With a Delayed and Uncertain Effective Date...........................................................12

    B.    The NVBC Erred in Confirming a Plan Which Released Third Parties.................................................................................17

    C.    The NVBC Erred in Confirming a Plan Which Did Not Preserve Set-Off Rights (Except for Those of Cole Kepro)....................21

    D.    The NVBC Erred in Confirming a Plan Which Did Not Disclose the Identity of Individuals Designated to Succeed the Debtor in All Respects, Including Collecting and Disbursing All Assets and Controlling All Litigation Claims. ....................................23

    E.    The NVBC Erred in Confirming a Plan Which Did Not Comply With the Notice Requirements of Fed.R.Bankr.P. 2002(a)(5). 26

    F.    The NVBC Erred In Basing its Decision on Purported Evidentiary Submissions Filed Two Days Prior to the Confirmation Hearing, and Provided Neither an Ability to Respond to Such Purported Evidence Nor Notice That Evidence Would be Taken at Confirmation ............................................27

VI.  CONCLUSION .......................................................................30

STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 .................................................................................................i

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT....ii

CERTIFICATE OF SERVICE.................................................................. iii

## TABLE OF AUTHORITIES

### Cases

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 577 (1985) ...............................2

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992) .................................................................................................................2

*Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir.2009) .................................2

*Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020) ...........18

*In re Buckenmaier,* 127 B.R. 233, 237 (9th Cir. BAP 1991) ...............................21

*Garner v. Shier (In re Garner),* 246 B.R. 617, 619 (9th Cir. BAP 2000) ...........................................................................................................3

*In re 431 W. Ponce De Leon, LLC,* 515 B.R. 660, 680 (Bankr. N.D. Ga. 2014) .............................................................................................16

*In re Beyond.com Corp.,* 289 B.R. 138, 143 (Bankr. N.D. Cal. 2003) ...................30

*In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269 (9th Cir. 1992)...................21, 22

*In re First Yorkshire Holdings, Inc*., 470 B.R. 864, 871 (B.A.P. 9th Cir. 2012).......................................................................................................21

*In re Knedlik*, No. BAP.WW-08-1011-KUKJU, 2008 WL 8444815, at *4 (B.A.P. 9th Cir. June 30, 2008) ..........................................................3

*In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995) .......................................18

*In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169 (Bankr. N.D. Ill. 2012)...........................................................................................16

*In re Potomac Iron Works*, 217 B.R. 170 (Bankr. D. Md. 1997) ....................12, 13

*In re Purdue Pharma L.P.*, 69 F. 4th 45 (2nd Cir. 2023), *cert. granted*, No. 23-124 (August 10, 2023)................................................................18

*In re Sutton,* 78 B.R. 341, 342 (Bankr. S.D. Fla. 1987) ...................................14, 15

iv

*In re Trans Max Technologies, Inc.*, 349 B.R. 80 (Bankr. D. Nev. 2006) ................................................................................. 12, 17

*In re USA Com. Mortg. Co.*, 369 B.R. 587, 592 (D. Nev. 2007) ............................. 1

*In re Walker*, 165 B.R. 994 (E.D. Va. 1994) ........................................ 14, 15

*In re WR Grace & Co.*, 729 F. 3d 332, 349 (3rd Cir. 2013) .................................. 16

*In re Yates Dev., Inc.*, 258 B.R. 36 (Bankr. M.D. Fla. 2000) ..................... 12. 15, 16

*Liberty Nat'l Enters. V. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd. P'ship)*, 115 F.3d 650, 653 ............................................... 15

*United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) ............................. 2

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ......................... 22

**<u>Statutes</u>**

11 U.S.C. § 105(D)(2)(B)(VI) ............................................................................. 7

11 U.S.C. § 553(a) ............................................................................................. 21

11 U.S.C. § 524(a) ............................................................................................. 17

11 U.S.C. § 524(e) ..........................................................................................17,18

11 U.S.C. § 1123(a)(5) ................................................................................. 14, 15

11 U.S.C. § 1129(a)(1) ....................................................................................... 17

11 U.S.C. § 1129(a)(3) ....................................................................................... 15

11 U.S.C. § 1129(a)(5)(A) ............................................................................24, 26

11 U.S.C. § 1129(a)(11) ..................................................................................15,16

28 U.S.C. § 157 .................................................................................................... 1

28 U.S.C. § 158(a)(1) .......................................................................................... 1

**<u>Rules</u>**

Fed. R. Bankr. P. 3017.1 ...................................................................................... 7

Fed. R. Bankr. P. 2002(a)(5) ........................................................................2, 8, 26

LR 3017 ................................................................................................................ 7

LR 7017(d)(3) ..................................................................................................... 28

LR 9014 ............................................................................................................... 29

LR 9014(a) .......................................................................................................... 27

1  LR 9014(a)(7) ................................................................................. 28

2  LR 9017 ......................................................................................... 27

3  LR 9017(d)(1) ............................................................................... 28

4  **Other Authorities**

5  Harvey R. Miller, *Chapter 11 Reorganization Cases and the
   Delaware Myth,* 55 Vand. L. Rev. 1987, 2011 (2002) ............................ 28
6

7  Lynn M. LoPucki & Joseph W. Doherty, *Why Are Delaware and New
   York Bankruptcy Reorganizations Failing?,* 55 Vand. L.Rev. 1933,
8  653 ...................................................................................................... 11

9  Weintraub & Crames, *Defining Consummation, Effective Date Of
   Plan Of Reorganization And Retention Of Postconfirmation
   Jurisdiction: Suggested Amendments To Bankruptcy Code And
10 Bankruptcy Rules,* 64 Am. Bankr.L.J. 245, 279 (1990) ......................... 12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

**JURISDICTIONAL STATEMENT**

The United States Bankruptcy Court, District of Nevada (the "NVBC") had jurisdiction over this matter pursuant to 28 U.S.C. § 157.  Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11…."   Section 157(b)(2)(L) defines "core proceedings" to include "confirmations of plans".

The United States District Court (the "USDC") has jurisdiction to hear appeals of final orders from bankruptcy judges within the judicial district shared by the underlying bankruptcy court if the appellant elects such a preference upon filing his appeal. 28 U.S.C. § 158(a)(1). "A confirmation order is a final order subject to appeal." *In re USA Com. Mortg. Co.*, 369 B.R. 587, 592 (D. Nev. 2007).

On August 24, 2023, NVBC entered its *Order on Objection to Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* (the "Memorandum Decision"). [ECF No. 1120][1]. 9 ROA_001743-_001752.  McAlary timely filed his notice of appeal on September 6, 2023.   [ECF No. 1171]. 10 ROA_001803-_001808. On August 25, 2023, NVBC entered its *Order: (A) Approving Debtor's Disclosure Statement [ECF No. 529] on a Final Basis; and (B) Confirming Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023 [ECF NO. 996]* (the "Confirmation Order" and, collectively with the Memorandum decision, the "Confirmation Orders").   [ECF No. 1126]. 9 ROA_001753-_001771. McAlary timely filed his Notice of Appeal on September 6, 2023.  [ECF No. 1172].  10 ROA_001818-_001841.

**II.**

**ISSUES PRESENTED AND STANDARD OF REVIEW**

1.      Whether the NVBC erred in confirming the Plan with a delayed and

---

[1] Mr. McAlary denominates docket entries from the Bankruptcy Case with the prefix "ECF No."

uncertain effective date.  McAlary contends that the NVBC utilized an erroneous legal standard, basing its confirmation decision on a finding that creditors were "no worse off" with confirmation than conversion; while the correct legal standard requires the Debtor to prove by a preponderance of evidence each requirement of confirmation.  "The bankruptcy court's conclusions of law, including its interpretations of the bankruptcy code, are reviewed de novo".  *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir.2009).

2.     Whether the NVBC erred in confirming a plan which released non-debtor third parties.  Such releases are prohibited as a matter of law, and therefore the standard of review is de novo.  *Id.*  Additionally, there was no evidence submitted upon which to base any finding with respect to such provisions.  While findings of fact are reviewed for clear error, this standard is met where a finding is "without 'support in inferences that may be drawn from the facts in the record'".  *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009), *citing Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 577 (1985).

3.     Whether the NVBC erred in confirming a plan which did not preserve set-off rights (except for those of Cole Kepro). This is a question of law, which should be reviewed de novo.  *Blausey v. U.S. Trustee*, 552 F.3d at 1132.

4.     Whether the NVBC erred in confirming a plan that did not disclose the identity of individuals designated to succeed the debtor in all respects, including collecting and disbursing all assets and controlling all litigation claims.  Again, at issue is the interpretation of the Bankruptcy Code, requiring de novo review.  *Id.*

5.     Whether the NVBC erred in confirming a plan which did not comply with the notice requirements of Fed.R.Bankr.P. 2002(a)(5).  Interpretation of rules is a question of law which is reviewed *de novo. Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 472 (9th Cir. 1992).

6.     Whether the NVBC erred in basing its decision on purported evidentiary submissions filed two days prior to the confirmation hearing, and

provided no notice that evidence would be taken at confirmation.  It is submitted that this involves interpretation of rules, which are also subject to *de novo* review. *Id.* Further, "Whether a particular procedure comports with basic requirements of due process is a question of law that the panel reviews de novo. *Garner v. Shier (In re Garner),* 246 B.R. 617, 619 (9th Cir. BAP 2000)." *In re Knedlik*, No. BAP.WW-08-1011-KUKJU, 2008 WL 8444815, at *4 (B.A.P. 9th Cir. June 30, 2008).

## III.

## STATEMENT OF THE CASE

**A. The Bankruptcy Filing, the Litigation Claims and Cole Kepro's Service as Co-Chair of the Unsecured Creditors' Committee**

1.    The bankruptcy case was filed on February 7, 2023. [ECF No. 1]. 1 ROA_000001-_000072.

2.    Debtor's assets include causes of action against Armondo Redmond, Bitaccess, Inc., Cole Kepro International, Inc. ("Cole Kepro"), Luis Flores, and Lux Vending DBA Bitcoin Depot (collectively, the "Litigation Claims" with the Cole Kepro, Bitaccess, and Bitcoin Depot litigation collectively referred to as the "Target Litigation").  [ECF No. 239] at p. 10, §74.   1 ROA_000096-_000190.

3.    On February 17, 2023, the Office of the United States Trustee (the "US Trustee") appointed a creditors' committee (the "Committee") consisting of Genesis Global Holdco, LLC, Cole Kepro, Brink's U.S., and OptConnect MGT, LLC. [ECF No. 131].   1 ROA_000079-_000081.

4.    On February 28, 2023, the US Trustee added Black Hole Investments LLC and Cennox Reactive Field Services LLC to the Committee.  [ECF No.177]. 1 ROA_000086-_000089.

5.    On March 10, 2023, Debtor filed its adversary complaint against Lux Vending, LLC d/b/a Bitcoin Depot. *See* Adv. # BK-23-01015 [ECF No. 257]. 1 ROA_000191-_000293.

**B. The Retention of Professionals, Interim Fee Procedures, Interim Fee Statements, and Additional Administrative Claims**

6.     Debtors have retained the following professionals:

    a. Fox Rothschild, LLP ("Fox") as Debtor's counsel. [ECF No. 119]. 1 ROA_000073-_000078.

    b.  Province, LLC, Debtor's Financial Advisor.  [ECF No. 223]. 1 ROA_000090-_000095.

    c. Jimmerson Law Firm, P.C. As Special Litigation Counsel. [ECF No. 322].  2 ROA_000302-_000306.

    d. Baker & Hostetler LLP As Regulatory Counsel.  [ECF No. 525]. 2 ROA_000363-_000366.

7.     Additionally, the Committee has retained the following professionals:

    a. New York law firm of Seward & Kissel, LLO ("SK") as counsel. [ECF No. 479].  2 ROA_000320-_000323.

    b. McDonald Carano LLP as counsel.  [ECF No. 480].  2 ROA_000324-_000327.

    c. FTI Consulting Inc. as Financial Advisor. [ECF No. 481]. 2 ROA_000328-_000332.

8.     On March 20, 2023, the Court entered its *Order Granting Debtor's Motion Pursuant To 11 U.S.C. §§ 105(a) And 331, And Fed. R. Bankr. P. 2016, Authorizing And Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals* (the "Fee Procedures Order"), which authorized the Debtor to pay 80% of fees and 100% expenses on a monthly basis subject to review when fee applications are filed with the Court. [ECF No. 321]. 2 ROA_000294-_000301. The Fee Procedures Order required professionals to file interim fee applications every 120 days (*id*. at p.4 ¶d). Debtor agreed to set a hearing on interim fee applications every four months unless otherwise ordered by the Court (*id*. at ¶(e)). No interim fee applications have been filed.

9.   As of August 15, 2023, Debtor faced "$4,067,768 in filed administrative expense claims, plus a projected $4,735,000 in forecasted professional fees owed, plus between $550,000 and $850,000 of additional Chapter 11 wind down costs, for an estimated total of between $9.35 million and $9.65 million, including material amounts of administrative claims subject to objection." *Debtor's Memorandum of Law in support of: (A) final approval of the Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization Dated May 8, 2023 [ECF No. 529] and (B) confirmation of the Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023 [ECF No. 996]* (Debtor's "Confirmation Brief") at [ECF No. 1078]. 8 ROA_001528-_001585.

10.   On March 30, 2023, Debtor filed its *Notice Of Bid Deadline Of April 12, 2023 For Submission Of Term Sheets In Connection With Either: (A) Plan Of Reorganization For Debtor; Or (B) Sale Of Substantially All Of Debtor's Assets* [ECF No. 375]. 2 ROA_000307-_000309.

11.   On April 27, 2023, the Court entered its *Order Establishing Bidding Procedures And Related Deadlines*. [ECF No. 483]. 2 ROA_000333-_000362.

12.   On April 25, 2023, Debtor filed its *Notice Of Designated Stalking Horse Bidder* designating RockitCoin, LLC as the "stalking horse bidder" pursuant to a term sheet providing for a sale price of $16.75 million. [ECF No. 473]. 2 ROA_000310-_000319.

13.    On May 26, 2023, Debtor filed its *Amended Notice of Designated Stalking Horse Bidder* attaching an Asset Purchase Agreement providing for a reduced sale price of $2.6 million. [ECF No. 605]. 4 ROA_000640-5 ROA_000931.

14.   On June 5, 2023, Debtor filed its *Notice Of Auction Results Regarding Sale Of Substantially All Of The Debtor's Assets* [ECF No. 618, *amended at* ECF No. 621 at p. 2, ¶¶4-5]. 6 ROA_00932-_00934 *amended* at 6 ROA_00935-_00937.

15.   On June 16, 2023, Debtor filed its *Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller*

*Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief.* [ECF No. 714, *amended at* ECF No. 729]. 6 ROA_00938-_001004 *amended at* 6 ROA_001005-_001007. This request was supported by the following facts:

> It is critical that the sales of the Heller Assets and the Genesis Coin Assets (collectively, the "Sale Assets") close as soon as possible, not only to retain the value of the Sale Assets, but also to prevent Debtor's continued incurrence of administrative expenses that reduce any potential recovery to unsecured creditors. In addition, Debtor is concerned about the deterioration of the Sale Assets, in light of Debtor's severely diminished cash flow, which has led the Debtor to cease operations in an effort to conserve cash and limit its cash burn. Debtor has borrowed the maximum amount under its DIP loan5 from Debtor's DIP lender, CKDL Credit, LLC (the "DIP Lender"). Each passing day brings increasing uncertainty regarding Debtor's future, leading to potentially greater losses for Debtor and its estate. See Ayala Declaration, ¶ 4.

*Id.* 3:12-20.

16.     On June 22, 2023, Debtor filed a notice attaching a revised Heller Asset Purchase Agreement and a revised Genesis Coin Asset Purchase Agreement. [ECF No. 749]. 6 ROA_001011-7 ROA_001231. The revised purchase agreements (1) reflected a Heller purchase price of $4.2 million (subject to reduction) plus assumption of certain liabilities (*id.* at p. 5 §1.3) and (2) provided for a Genesis purchase price of $1.5 million plus 1% "of all net proceeds received by all Machine Operators from any of those certain DCM machines included in the assets sold by Seller to Heller Capital, Inc. in the Heller Purchase Agreement that operate on Seller's Software". *Id.* at p. 113, §2.30.

17.     On June 30, 2023, the Court entered its *Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital*

*Group, LLC, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief.* [ECF No. 795]. 7 ROA_001237- _001254.

18.     Other than these assets, the only assets left to liquidate to pay the remaining administrative claims are the litigation assets and any recovery that may result from the pending surcharge motion. [ECF No. 1079] at 6: Exhibit 1. 8 ROA_001586-_001594. [ECF No. 926].

**C. The Amended Plan Process**

19.     On May 8, 2023, Debtor filed its *Chapter 11 Plan Of Reorganization Dated May 8, 2023* [ECF 528] and *Debtor's Disclosure Statement For Chapter 11 Plan Of Reorganization Dated May 8, 2023*. [ECF No. 529]. 2 ROA_000376- 3 ROA_000559.

20.     On the same day, Debtor filed its *Ex Parte Motion For Order Pursuant To 11 U.S.C. § 105(D)(2)(B)(VI), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form Of Ballots; (IV) Scheduling Voting And Objection Deadlines; And (V) Granting Related Relief.* [ECF No. 530].  3 ROA_000560-_000604.

21.     On May 12, 2023, Court entered its *Order Pursuant To 11 U.S.C. § 105(d)(2)(B)(vi), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form Of Ballots; (IV) Scheduling*

*Voting And Objection Deadlines; And (V) Granting Related Relief.* [ECF No. 554]. 3 ROA_000605-_000633.

22.   On May 12, 2023, Debtor filed its *Notice Of Combined Hearing Re: (I) Final Approval Of Disclosure Statement; And (II) Confirmation Of Chapter 11 Plan Of Reorganization Dated May 8, 2023*, noticing a confirmation hearing for June 28, 2023. [ECF No. 555]. 4 ROA_000634-_000639. By order entered on June 22, 2023, that hearing was continued to July 27, 2023. [ECF No. 741].  6 ROA_001008-_001010. By minute entry of July 24, 2023, the confirmation hearing was continued to August 17, 2023.

23.   On July 7, 2023, the Debtor filed its *Supplement To Debtor's Chapter 11 Plan Of Reorganization Dated May 8, 2023* attaching a Liquidation Analysis as Exhibit B. [ECF No. 821], estimating professional fees for the case to be between three and four million dollars.  7 ROA_001255-_001296.

24.   On August 1, 2023, sixteen days prior to the Confirmation Hearing, Debtor filed its *First Amended Chapter 11 Plan Of Reorganization Dated August 1, 2023* (the "Amended Plan"). [ECF No. 996].  8 ROA_001448-_001501. The Amended Plan contains the following substantial changes from the reorganization plan as originally proposed: (1) eliminating funding for the creditors' trust; (2) adding a second Administrative Claim Bar Date permitting additional administrative claims to be filed through the Effective Date; (3) establishing a second "secured claims trust" with secured creditors to receive interests in that trust rather than direct payments, impairing a previously unimpaired class; and (4) delaying the Effective Date until sufficient funds exist to pay administrative creditors. *Id.* No amended disclosure statement was filed, and the Debtor did not provide the requisite twenty-one days' notice of the time to accept or reject a modified plan under Fed.R.Bankr.P. 2002(a)(5).  Despite having filed notices of professional fees incurred of over $4.5 million and despite the administrative bar

date having passed, the Debtor failed to disclose the magnitude of professional or administrative claims and failed to file a new liquidation analysis. *Id*.

25.     On August 15, 2023, two days prior to the Confirmation Hearing, Debtor filed its Confirmation Brief. [ECF No. 1078].  8 ROA_001528-_001585. Debtor also filed the supporting *Declaration of Tanner James* [ECF No. 1079] (the "James Decl.") on August 15, 2023, providing a substantially revised liquidation analysis.  8 ROA_001586-_001594.

**D. Debtor's Monthly Operating Reports Reflect Millions in Losses and Millions in Professional Fees**

26.     On July 20, 2023, Debtor filed its *Monthly Operating Report for the period ending 4/30/23*, reflecting that, as of April 30, 2023, (1) Debtor had incurred losses totaling $11,968,635 and (2) faced post-petition payables of $8,630,999. [ECF No. 901].  7 ROA_001297-_001419.

27.     On October 16, 2023, Debtor filed its *Monthly Operating Report for the period ending 5/31/23*, reflecting that, as of May 30, 2023, (1) Debtor had incurred losses totaling $12,950,605 and (2) faced post-petition payables of $7,898,235. [ECF No. 1388].  10 ROA_001964-_002033.

28.     On October 3, 2023, Debtor filed its *Monthly Operating Report for the period ending 6/30/23*, reflecting that, as of June 30, 2023, (1) Debtor had incurred losses totaling $17,389,382 and (2) faced post-petition payables of $4,388,404. [ECF No. 1329].  10 ROA_001854-_001965. To date, even though monthly operating reports are due on the 21st of each month for the prior month, Debtor has failed to file its July, August, and September Monthly Operating Reports.

**E. Other Matters**

29.     On June 12, 2023 "expressly at the behest of the Debtor's professional advisors", McAlary resigned as the Debtor's CEO, under the belief "from discussions with those advisors that [his] resignation was required by the Committee". [ECF No. 1174] at ¶ 9. 10 ROA_001842-_001853. Daniel Alaya, a

professional hired as an independent director hired shortly before the bankruptcy, was designated as Debtor's responsible person.  [ECF No. 772].  7 ROA_001232-_001236.

30.    On July 24, 2023, the Committee filed the *Motion Of The Official Committee Of Unsecured Creditors For An Order Granting Leave, Derivative Standing And Authority To Commence, Prosecute And Settle Claims On Behalf Of The Debtor's Estate* seeking "derivative standing to prosecute certain claims against the Debtor's prepetition lenders that it was charged with investigating and preserving for the benefit of the estate". [ECF No. 925 at p. 2 ¶1].  8 ROA_001424-_001444. As reflected in that motion:

> The unfortunate reality of this case is that the Debtor's assets were worth less than the value of the secured debt, and the proceeds of the sale of the Debtor's assets solely benefit the Debtor's secured lenders. It is, therefore, imperative that the Committee pursue the Preserved Claims in order to ensure that all value that should be appropriately allocated to unsecured creditors is so allocated, and that the secured lenders—who are undoubtedly vastly undersecured—do not receive outsized benefits to which they are not entitled.

*Id.* at ¶2.  That motion was set for hearing on August 29, 2023 (and was granted by the NVBC). [ECF No. 932].  8 ROA_001445-_001447.

**F.  McAlary's Objection to the Amended Plan**

31.    After Debtor filed its Amended Plan on August 1, 2023, a hearing regarding the confirmation of the Amended Plan and the approval of the Disclosure Statement (the "Confirmation Hearing") was set for August 17, 2023. [ECF No. 918]. 8 ROA_001420-_001423. On August 2, 2023, the Parties stipulated to extend McAlary's time to object to the Amended Plan from August 3, 2023, to August 9, 2023. [ECF No. 1003]. 8 ROA_001502-_001505.

32.    On August 9, 2023, McAlary, who is both a creditor and an equity holder, filed his Objection to Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023. [ECF No. 1061].  8 ROA_001506-_001527.

10

33.     The Confirmation Hearing occurred on August 17, 2023. Transcript Regarding Hearing Held on 8/17/23 [ECF No. 1105].  9 ROA_001679-_001742.

34.     The NVBC entered its Memorandum Decision on August 24, 2023 [ECF No. 1120] and its Confirmation Order on August 25, 2023 [ECF No. 1126]. 9 ROA_001753-_001771.

**G. McAlary's Appeals of the Confirmation Orders**

35.     On September 6, 2023, McAlary filed his Notices of Appeals appealing the Confirmation Order and the Memorandum Decision whereby he elected for the Appeals to be heard in USDC. [ECF Nos. 1171 and 1172].   10 ROA_001803-_001841.

36.     By Minute Order entered on October 20, 2023, the Court consolidated the Appeals in United States District Court Case No. 23-cv-01424-GMN. 10 ROA_002047-_002049.

37.     On October 20, 2023, McAlary filed a *Motion for Certification of Appeals to the United States Court of Appeals for Ninth Circuit [Fed. R. Bankr. Proc. 8006]* [ECF No. 7 in U.S.D.C. Case No. 23-cv-01424-GMN]. 10 ROA_002034-_002046.

## IV.

## SUMMARY OF THE ARGUMENT

Too often, the feasibility determination can be compromised by an unhealthy alliance of professionals who want their fees, creditors who want to postpone reporting the inevitable, and debtors who just want another chance. *See* Lynn M. LoPucki & Joseph W. Doherty, *Why Are Delaware and New York Bankruptcy Reorganizations Failing?,* 55 Vand. L.Rev. 1933, 1983–84 (2002); Harvey Miller, *Chapter 11 Reorganization Cases and the Delaware Myth,* 55 Vand. L.Rev. 1987, 2011 (2002) ("The real problem lies not in the Delaware Bankruptcy Court, but in the conference rooms across the country where the debtors and creditors create and agree to reorganization plans. In those conference rooms, a bankruptcy judge has no control or influence, and the parties themselves may bind each other to dubious reorganization

plans.")….

*In re Trans Max Techs., Inc.,* 349 B.R. 80, 92–93 (Bankr. D. Nev. 2006).  In this case, the NVBC entered its Orders approving confirmation of a Plan which lacked funds to "go effective".  Thus, creditors and other parties in interest are left in limbo.  Debtor, ***which is controlled solely by the professionals whose administrative claims continue to increase at the rate of hundreds of thousands of dollars each month***, continues to run the show, and each day the likelihood of paying creditors is diminished by these accruing fees.  The Bankruptcy Court based its decision, not upon a finding that the Plan would be implemented, but on a finding that professionals preferred confirmation to conversion to Chapter 7 (in which an independent trustee would be able to evaluate the reasonableness of fees, and the value of litigation claims remaining in the estate).  This was error as a matter of law.

## V.

## ARGUMENT

### A. The NVBC Erred in Confirming a Plan With a Delayed and Uncertain Effective Date

"There are two views as to when the effective date is to occur: (1) on or close to the entry of the confirmation order; or (2) around the time when a confirmation order becomes final. *See In re Yates Dev., Inc.*, 258 B.R. 36, 43 (Bankr. M.D. Fla. 2000). *See also In re Potomac Iron Works, Inc.*, 217 B.R. at 173."  In contrast, here there is no prospect for the effective date to occur.  *In re Potomac Iron Works*, the court held that the effective date "should be set forth in the plan with specificity." 217 B.R. 170, 173 (Bankr. D. Md. 1997). Citing  Weintraub & Crames, *Defining Consummation, Effective Date Of Plan Of Reorganization And Retention Of Postconfirmation Jurisdiction: Suggested Amendments To Bankruptcy Code And Bankruptcy Rules,* 64 Am. Bankr.L.J. 245, 279 (1990), the court recognized the "need of a 'definitive date upon which both debtors and creditors can anticipate the

commencement of the operation of the plan and the distribution of the consideration, starting with the date of the entry of the order of confirmation.'" *Potomac Iron Works*, 217 B.R. at 172.

Debtor's Amended Plan provides that the effective date shall occur on "the first date on which all of the conditions precedent described in Section 9.1 of the Amended Plan have occurred or have been waived" (the "Effective Date"). Amended Plan [ECF No. 996] at 11.  8 ROA_001448-_001501. Paragraph (f) of Section 9.1 of the Amended Plan provides that one of the conditions for the occurrence of the Effective Date is that the "Confirmation Funds" are to be transferred by the Debtor or the Creditor's Trust. *Id*. at 9.   Those "Confirmation Funds" are defined in the Amended Plan as:

> …all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date:  (a) to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims; (b) to the extent not previously satisfied prior to the Effective Date as provided herein, to Holders of the Allowed DIP Claims, the Enigma Secured Claim, the Genesis Secured Claim, the AVT Secured Claim and Allowed Other Secured Claims; (c) to the U.S. Trustee for U.S. Trustee Fees due as of the Effective Date; and (d) for any other Distributions and payment of costs and expenses in connection with consummating the Amended Plan, including the Professional Fee Escrow Account and the Administrative and Priority Claims Escrow Account.

*Id.* at 9.

This provision means that the Amended Plan's Effective Date will not occur unless or until the Debtor has sufficient funds to pay all Administrative Claims and Professional Fees.  As of the confirmation date, the Debtor represented that it had less than $2.2 million available to pay administrative claims. Confirmation Brief [ECF No. 1078] at p. 53 ¶147.  8 ROA_001528-_001585. However, the Debtor

13

1    admitted that then-existing professional fees alone exceeded $4.7 million and

2    projected administrative claims that would total $6.5 to $9.5 million. *Id.* at p. 54

3    ¶¶150, 152.  The fact that the Plan has no certain Effective Date and that the Effective

4    Date is subject to future events which might not happen at all renders the Plan

5    unconfirmable.

6        11 U.S.C. §1123(a)(5) requires, as a condition to confirmation, that a plan

7    "provide adequate means for the plan's implementation".  As discussed extensively

8    in *In re Walker*, 165 B.R. 994 (E.D. Va. 1994), where there is no certainty that the

9    proposed means of implementation of the plan will shortly occur, the plan lacks

10   adequate means for the plan's implementation such that confirmation is improper.[2]

11   In *Walker*, the court reversed the decision approving confirmation of a plan which

12   provided for payments to be made from the liquidation of real estate.  The plan

13   "made clear that the [debtors] 'cannot warrant that the sales necessary to fund the

14   plan will take place at or before a particular time' and apparently for that reason the

15   Plan set no date for completion or for making payments".  *Id.* at 997.  The court

16   examined other cases where the proposed plan relied upon future events without a

17   certainty as to when (or in some cases whether) such events would occur.  The court

18   found that such decisions set forth a principle of vital significance to the credibility

19   of chapter 11 reorganizations-the debtor must offer more than speculation about the

20   source of funding for the plan. *Id.*  at 1003.

21       In *In re Sutton,* 78 B.R. 341, 342 (Bankr. S.D. Fla. 1987), cited with approval

22   in *Yates*, the court reiterated this principle.  There, the plan could not be confirmed

23   because it failed to provide adequate means of implementation under Section

24   1123(a)(5) where:

25
         The confirmation hearing on the debtor's plan is scheduled for October
26       6. Debtor's chapter 11 plan, therefore, boils down to nothing more than

27   ─────────────────────────
     [2] 11 U.S.C. §1123(a)(5) requires that the Plan "provide adequate means for the plan's
28   implementation".

an announced hope that he will sell his stock by February 6, 1988 for enough to satisfy the debt to the corporation, which was fixed by judgment against him 15 months before that date. He has produced no specific offer of purchase, no specific sale date, and no credible basis to value the stock. He asks this court to hold the corporate creditor at bay another five months from today to see if he can do what he hopes to do, but has failed to do the past ten months.

It is important to note that in the instant case, Debtors "projected" that they might be able to liquidate litigation claims within "six to nine months" in order to attempt to generate sufficient funds to "go effective". The instant case presents an even longer period than the five months at issue in *Sutton* in which the Debtor "hopes" to find the means to implement the plan.

In addition to uncertainty as to "when" the effective date will occur, which in and of itself precludes confirmation, here there is great uncertainty as to "if" the effective date will ever occur. As held in *Yates Dev., Inc.*, a plan does not contain adequate means for implementation under 11 U.S.C. §1123(a)(5) where "the only circumstance under which an effective date exists is a future appellate ruling in Debtor's favor". 258 B.R. at 42.

In addition to precluding confirmation under Section 1123(a)(5), the effective date failure precludes confirmation under 11 U.S.C. §1129(a)(3) and (11).[3]

11 U.S.C. §1129(a)(3) requires as a condition to confirmation that the plan be "proposed in good faith and not by any means forbidden by law". "[T]he absence of an adequate means of implementation demonstrates a lack of good faith thereby precluding confirmation of the plan of reorganization". *Walker*, 165 B.R. at 1003.

11 U.S.C. §1129(a)(11) requires as a condition to confirmation that "[C]onfirmation of the plan is not likely to be followed by the liquidation, or the need

---

[3]   The Debtor bears the burden of proving each element of Section 1129(a) by a preponderance of the evidence. *See Liberty Nat'l Enters. V. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd. P'ship),* 115 F.3d 650, 653 (9th Cir. 1997), cited by Debtor in its Confirmation Brief [ECF No. 1078] p. 28:4-5.  8 ROA_001528-_001585.

for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  This is referred to as the "feasibility" test.  *See In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169 (Bankr. N.D. Ill. 2012) ("the feasibility test is firmly rooted in predictions based on objective facts") (internal quotations omitted). A Plan is not feasible if it "hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *In re Biz As Usual, LLC*, 627 B.R. 122, 130 (Bankr. E.D. Pa. 2021). *See also In re WR Grace & Co.* 729. F. 3d 332, 349 (3rd Cir. 2013) (same, citing *In re Am. Capital Equip. LLC*, 688 F.3d 145, 1156 (3d Cir. 2012)). As held in *Yates*, where the proposed plan lacked adequate means of implementation because the effective date was dependent on the uncertain outcome of pending litigation[4], the plan also fails the feasibility test under Section 1129(a)(11).  258 B.R. at 44.

The NVBC erred in its analysis of the "feasibility test".   The Court stated:

> In this instance, is there a certainty that the proposed creditor trust will succeed in collecting all of the assets it possesses?  No.  Is there certainty that a Chapter 7 trustee would succeed in collecting all the assets that she or he possesses?  No.  Is certainty required?  No.  Is there a sufficient showing of certainty that the claims of the estate will be pursued?  Yes.

Memorandum Decision [ECF No. 1120] at 5:15-18.  9 ROA_001743-_001752.

However, a finding that claims "will be pursued" falls far short of a finding that the estate will generate sufficient funds to pay administrative claims, a prerequisite to having the plan go effective and creating the creditor trust.  Nor is the fact that the Plan calls for liquidation a means of avoiding the feasibility test.  *See, e.g., In re 431 W. Ponce De Leon, LLC,* 515 B.R. 660, 680 (Bankr. N.D. Ga.

---

[4]   There, a positive appeal outcome.  Here, the collection of sums from multiple litigations where the Debtor did not even offer evidence that trial dates had been set.

2014)(liquidating plan did not meet the feasibility test where "the evidence did not establish that [the plan proponent] has sufficient cash to pay the amounts owed").

In addition, a case in this district relating to exit financing found that Section: "1129 requires the plan's proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *In re Trans Max Technologies, Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006) ("Particularly important in this regard is that the plan proponent demonstrate that any necessary financing or funding has been obtained, or is likely to be obtained").

In short, the NVBC made no findings as to whether the Debtor would be able to maintain its operations under the Plan because it is clear the Debtor cannot. The NVBC also made no findings as to when or even if the effective date would occur and was untroubled by the fact that the effective date would likely never occur. The undisputed facts established that the Debtor does not have funds to pay administrative claims. Because having such funds is a condition to the effective date, the Debtor failed to demonstrate by a preponderance of evidence that the plan (1) contains adequate means for implementation; (2) was proposed in good faith; and (3) is feasible.

**B. The NVBC Erred in Confirming a Plan Which Released Third Parties**

The bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Pursuant to 11 U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor from personal liability for any debts. Section 524 does not, however, provide for the release of *third parties* from liability; to the contrary, § 524(e) specifically states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

This court has repeatedly held, without exception, that § 524(e) precludes

17

bankruptcy courts from discharging the liabilities of non-debtors, *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995).[5]

Here, the Plan includes numerous provisions which purport to discharge liability of third parties, including Debtor's professionals, the Committee, its members, and its professionals. Amended Plan [ECF No. 996] at 12:20-21.8 ROA_001448-_001501. This is especially egregious in that one of the "exculpees" is Cole Kepro, the entity whose misconduct was largely responsible for the Debtor's bankruptcy.

The Plan provides:

**10.2 Exculpation of Exculpees.**

(a) None of the Exculpees shall have or incur any liability to any Holder of a Claim against or Interest in Debtor, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct. The Exculpees shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case. No Holder of a Claim against or Interest in Debtor, or any other party-in-interest, including their respective Representatives, shall have any

---

[5]  The Ninth Circuit has held "that § 524(e) does not bar a narrow exculpation clause …that is, one focused on actions of various participants in the Plan approval process and relating only to that process". *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020).  However, the Amended Plan provides for extensive releases of multiple parties, including the Committee ***and its members***, and complete releases of the not-yet-named Creditor Trustee, the Secured Claims Trustee and each of their Representatives for all future actions.   This far exceeds the bounds of *Blixseth*. Additionally, it should be noted that the Supreme Court has granted certiorari on the question of the availability of third-party releases.  *See In re Purdue Pharma L.P.*, 69 F. 4th 45 (2nd Cir. 2023), *cert. granted*, No. 23-124 (August 10, 2023).

right of action against the Exculpees for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, except to the extent arising from fraud, gross negligence or willful misconduct. For avoidance of doubt, nothing contained herein affects the rights of any Holder of a Claim or Interest pursuant to guarantees given by non-Debtor Exculpees.

(b) All Holders of Claims against or Interests in Debtor and any other parties-in- interest, along with any of their Representatives and any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any Exculpee or against the property or interests in property any Exculpee, in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan; provided, however, that nothing contained herein shall preclude any Holder or other party-in-interest from exercising its rights pursuant to and consistent with the terms of the Plan and the Operative Documents delivered under or in connection with the Plan; and provided, further, for avoidance of doubt, that nothing contained herein affects the rights of any Holder of a Claim or Interest pursuant to guarantees given by non-Debtor Exculpees.

*Id.* at §10.3.

The Amended Plan additionally exculpates and indemnifies the Creditor Trust, the Creditor Trustee, the Secured Claims trust, and the Secured Claims Trustee.

*Id.* at 43-44.

These provisions are particularly troubling in the unique circumstances of this

case.   The Committee (whose co-chair is Cole Kepro) has filed claims against McAlary alleging post-petition misconduct. [ECF No. 1161].   9 ROA_001772-_001802. However, post-petition actions taken by McAlary were upon the advice of the Debtor's professionals. Declaration of Chris McAlary in Support of Reply in Support of Motion to Convert Case to Chapter 7 [ECF No. 1174] at ¶9. 10 ROA_001842-_001853.

Additionally, McAlary asserts that Cole Kepro sought its Committee role to assure the liquidation of Cash Cloud, rather than its reorganization, because a potential judgement could force Cole Kepro into its own bankruptcy. *Id.* at ¶ 4-6. In fact, the Committee did rush the Debtor to an immediate 363 sale. *Id.* However, the improper third-party releases of Cole Kepro, the Committee and its counsel improperly divest both the estate and McAlary of the ability to pursue such claims. Such third-party releases are patently improper, and their inclusion renders confirmation in error.

While the approval of the third-party releases is improper as a matter of law, it should also be noted that the Bankruptcy Court did not address McAlary's objection to the third-party releases in the Memorandum Decision.   The Confirmation Order includes the following:

> The injunctions and exculpations contained within the Amended Plan, including Sections 10.1, 10.2, and 10.3 of the Amended Plan, comply with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Pursuant to Sections 105(a) and 1129 of the Bankruptcy Code and Rules 3016(c) and 9019 of the Federal Rules of Bankruptcy Procedure, the settlements, compromises, injunctions, and exculpations set forth in the Amended Plan are approved as an integral part of the Amended Plan, are fair, equitable, reasonable, and in the best interest of the Debtor, its Estate, and the Holders of Claims and Equity Interests.

However, there are no factual findings to support this conclusion.   In the absence of complete findings, the appellate court may vacate a judgment.   This is required

where "a full understanding of the issues under review is not possible without aid of the findings". *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 871 (B.A.P. 9th Cir. 2012).

## C. The NVBC Erred in Confirming a Plan Which Did Not Preserve Set-Off Rights (Except for Those of Cole Kepro)

11 U.S.C. §553(a) provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case

The requirement to preserve the right of setoff has long been recognized by the Ninth Circuit to survive plan confirmation.  *See, e.g., In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1276 (9th Cir. 1992) ("We conclude that section 553 must take precedence over section 1141").  In doing so, the court noted that:

> Setoffs have a long and venerable history, dating back to Roman and English law. Setoffs in bankruptcy are almost as venerable, having been established in England in 1705 and in the United States in 1800. [*In re*] *Buckenmaier,* 127 B.R. 233, 237 (9th Cir. BAP 1991). Since that time, setoffs in bankruptcy have been "generally favored," and a presumption in favor of their enforcement exists. *Id.* Giving precedence to section 1141 would reverse this long-standing presumption. Setoffs would only be allowed if sanctioned in a plan of reorganization. If Congress had intended to make such a major change from the common law, one might expect some indication of that intent in the statute itself. None can be found.
>
> Moreover, the primacy of setoffs is essential to the equitable treatment of creditors. A setoff is allowed as a defense to a claim brought *by the debtor* against a creditor. The creditor can claim only an amount large enough to offset its debt; it cannot collect anything from the debtor. Absent a setoff, a creditor in NBC's position is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to

receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place.

*In re De Laurentiis Ent. Grp. Inc.,* 963 F.2d 1269, 1277 (9th Cir. 1992).[6]

While Section 3.3 of the Amended Plan preserves the "Debtor's, the Creditor Trustee's and the Disbursing Agent's setoff rights, section 10.1(b), provides that:

> UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE AMENDED PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE AMENDED PLAN, OR TRANSFERRED TO THE CREDITOR TRUST OR THE SECURED CLAIMS TRUST, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE

Amended Plan [ECF No. 996] at 41.   8 ROA_001448-_001501. (Emphasis in original.) This inappropriate attempt to divest McAlary and others of the setoff rights preserved under Section 553 also extends to and inappropriately affects McAlary's rights enumerated in the provision of Section 10.2(b).

The impropriety of doing so was impliedly recognized by the Debtor.  Cole Kepro also objected to the Debtor's effort to impair setoff rights in the Plan. Confirmation Brief [ECF No. 1078].  8 ROA_001528-_001585. Debtor stated:

> Notwithstanding any provision to the contrary in this Confirmation Order, the Plan (including section 10.1(b) of the Plan), or any Plan

---

[6] While the *De Laurentis* case suggests that a provision in a confirmed plan in derogation of Section 553 is simply invalid, the United States Supreme Court's subsequent decision in *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010) clarifies that a creditor can only challenge an illegal plan provision via direct appeal.

Supplements, the rights of Cole Kepro International, LLC ("CKI"), if any, to assert an offset or recoupment defense under applicable law and/or section 553 of the Bankruptcy Code with respect to any claims asserted against it based on claims that it holds against the Debtor, as set forth in CKI's filed proofs of claim [Claim Nos. 41 and 42] or otherwise, are. expressly preserved.

*Id.* at 50-51. Further, Debtor stated:

144.  To resolve McAlary's concerns regarding offset rights (McAlary Objection, pp.14-15), the Debtor is willing to provide McAlary with similar language in the Confirmation Order as that agreed to with Cole Kepro above.

*Id.* at p. 53 of 57.

At the Confirmation Hearing, McAlary agreed to such a modification. Transcript regarding Hearing Held on 8/17/23 [ECF No. 1105] at 16:11-13. 9 ROA_001679-_001742. However, the Confirmation Order provides:

21.  **Cole Kepro's Reservation of Rights.** Notwithstanding any provision to the contrary in this Confirmation Order, the Amended Plan (including Section 10.1(b) of the Amended Plan), or any Plan Supplements, the rights of Cole Kepro International, LLC ("CKI"), if any, to assert an offset or recoupment defense under applicable law and/or section 553 of the Bankruptcy Code with respect to any claims asserted against it based on claims that CKI holds against the Debtor, as set forth in CKI's filed proofs of claim [Claim Nos. 41 and 42] or otherwise, are expressly preserved.

Confirmation Order [ECF NO. 1126] at 16-17 ¶21.  9 ROA_001753-_001771.

Despite its agreement to do so, Debtor did not provide the same reservation of set-off rights to McAlary as was provided to Cole Kepro.  The disparate treatment of McAlary, the impairment of his set-off rights, and the entry of the Confirmation Order contrary to the Debtor's written agreement, all mandate reversal.

**D. The NVBC Erred in Confirming a Plan Which Did Not Disclose the Identity of Individuals Designated to Succeed the Debtor in All Respects, Including Collecting and Disbursing All Assets and Controlling All**

**Litigation Claims.**

11 U.S.C. §1129 (a)(5)(A) requires, as a condition to confirmation, that:

> (i) the proponent of the Amended Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Amended Plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Amended Plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.

Here, while the Amended Plan provides for a Creditor's Trust Trustee, a Secured Creditors' Trust Trustee, and a Disbursing Agent to succeed the Debtor, receiving all remaining assets and the ability to take all actions, as well as the obligation to make all plan payments, the Amended Plan fails to disclose the identity of any of them. Indeed, the "Plan Supplement" filed on July 7, 2023 [ECF No. 528] states "[*]" with respect to the identity and billing rates of the Trustee and provides only that the trust may elect a disbursing agent (in contrast, the Amended Plan [ECF No. 996] at 10:24-25 defines the Disbursing Agent as "the Person or Entity that may be designated in the Confirmation Order, the Creditor Trust Agreement and/or the Secured Claims Trust Agreement"). 2 ROA_000376-8 ROA_001501. The Memorandum Decision's conclusion that no disclosure was required because there was "no management or reorganization succession" is erroneous as to both fact and law. Memorandum Decision [ECF No. 1120] at p. 4:24. 9 ROA_001743-_001752.

As a matter of law, §1129(a)(5)(A) does not contain an exception to the disclosure requirement where the debtor dissolves post-effective date. To the contrary, that statute expressly requires the disclosures to be made with respect to "a successor to the debtor under the Amended Plan". *Id.* Further, a review of the Revised Creditor Trust Agreement and Declaration of Trust[7] (the "Creditor Trust

---

[7] Debtor's Notice of Filing of (A) Revised Exhibit A – Creditor Trust Agreement

Agreement") makes it clear that the Creditor Trust is the successor to the Debtor. This is evident through the Creditor Trust Agreement's provision allowing all Debtor's assets to transfer to the Creditor Trust and allow Beneficiaries to transfer to the Creditor Trust as well.

> Pursuant to the Plan, the Debtor, the Trust, Trustee, and Beneficiaries are required to treat the transfer of assets to the Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, followed by a transfer by such Beneficiaries to the Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

Notice of Filing [ECF No. 1081] at Exhibit 1 Section 9.  9 ROA_001595-_001678.

Further evaluation of the Creditor Trust Agreement reveals the *breadth* of power the Creditor Trust holds. First, the Creditor Trust, by and through its Trustee, "may control and exercise authority over the Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust." *Id.* at 9 Section 4.1. Second, the Creditor Trust maintains the power to contract. *Id.* Third, the Trustee holds the following powers amongst many others: (1) "to effectuate all actions… and exercise all rights and privileges previously held by the Debtor; (2) "to exercise…all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued and take all actions that may be or could have been taken by any officer, director, or shareholder of the Debtor"; (3) "[t]o make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Trust and the Trustee" and make payments for related fees; and (4) "[t]o calculate and make all distributions on behalf of the Trust to holders Trust Distributees." *Id.* at 9-

---

and Declaration of Trust (the "Revised Creditor Trust Agreement"); and (B) Redline of Exhibit A – Creditor Trust Agreement and Declaration of Trust attached to Supplement to Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023 [ECF No. 528] (Debtor's "Notice of Filing") at Exhibit 1 [ECF No. 1081]. 9 ROA_001595-_001678.

14 Section 4.2. As illustrated by its Agreement, The Creditor Trust is clearly Debtor's successor, taking full control and management of all assets, holding all decision-making powers, and taking responsibility for payments under the Plan.

The Court also erred in confirming the Plan because the Debtor has the burden to prove that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy". 11 U.S.C. §1129(a)(5)(A)(ii). Of course, such a finding cannot be made when the identity of such individuals is not even disclosed!

**E. The NVBC Erred in Confirming a Plan Which Did Not Comply With the Notice Requirements of Fed.R.Bankr.P. 2002(a)(5).**

The Amended Plan was filed on August 1, 2023, and the Confirmation Hearing was held on August 17, 2023. Fed.R.Banrk.P. 2002(a)(5) requires that the proponent provide twenty-one days' notice of the time fixed to accept or reject a modified plan. This is particularly egregious where, as here, the original Plan was solicited based on a May 8, 2023, Disclosure Statement which estimated administrative claims as follows:

| Summary of Unclassified Classified Claims | |
|---|---|
| **Designation** | **Estimated/Asserted** |
| Administrative Expense Claims | $1,300,000 |
| Professional Fee Claims | $1,500,000 |
| Priority Tax Claims | $300,000 |
| US Trustee Fees | $500,000 |

[ECF No. 529] at p. 34. 3 ROA_000430-_000559.

In contrast, the Debtor revealed on August 15, 2023, approximately one

business day before the Confirmation Hearing,[8] that **disclosed** professional fees to date exceeded $4.6 million and were likely to exceed $7.5 million!

The Amended Plan was revised on August 1, 2023, to add a new "condition" to the occurrence of the effective date: "Debtor and/or the Creditor Trustee on behalf of the Creditor Trust shall have transferred and/or segregated Cash Assets in the aggregate amount of the Confirmation Funds in accordance with Article VI of the Amended Plan". Amended Plan [ECF No. 996] at §9.1(f). 8 ROA_001448-_001501. As discussed above, this rendered it impossible for the plan to go "effective" anytime near the date of the Confirmation Hearing.  In fact, the Bankruptcy Court recognized only that there "may be" sufficient funds for the plan to go effective. Memorandum Decision [ECF No. 1120] at p. 6:8. 9 ROA_001743-_001752.

**F.  The NVBC Erred In Basing its Decision on Purported Evidentiary Submissions Filed Two Days Prior to the Confirmation Hearing, and Provided Neither an Ability to Respond to Such Purported Evidence Nor Notice That Any Evidence Would be Taken at Confirmation**

United States Bankruptcy Court, District of Nevada, Local Rules of Practice ("LR") Rule 9014(a)(7) provides:

> (7) The judge may deem the first date set for the hearing to be a status and scheduling hearing if the judge determines that further evidence must be taken to resolve a material factual dispute or if additional briefing is warranted. Live testimony will not be presented at the first date set for hearing, unless for good cause found by the court in advance of the hearing or otherwise so ordered. The judge may order a further hearing at which oral evidence and exhibits will be received, or may, as appropriate, order that all evidence be presented by affidavit or declaration.

LR 9017 provides for the use of alternate direct testimony at evidentiary hearings, providing, in relevant part, that: "The plaintiff or movant must submit to opposing counsel all declarations and exhibits in its case in chief not less than fourteen (14)

---

[8]   The Reply was filed at 5:52 p.m. on August 15, 2023, and the Confirmation Hearing was set for 9:30 a.m. on August 17, 2023.  Confirmation Brief [ECF No. 1078] at 1.  8 ROA_001528-_001585.

1    business days before the trial or the hearing on the contested matter". LR 9017(d)(1).

2    LR 7017(d)(3) requires lodging of such declarations and exhibits five days before

3    the hearing.

4            In this case, the NVBC did not enter any order prior to the hearing that live

5    evidence would be taken.  Debtors submitted two declarations after hours on August

6    15, 2023.  Pursuant to LR 9014(7), all parties had reason to believe that if there was

7    a "material factual dispute" the NVBC would set a further evidentiary hearing to

8    determine the facts.   The NVBC did not invite any live examination or cross

9    examination of witnesses at the Confirmation Hearing.   Transcript Regarding

10   Hearing Held on 8/17/23 [ECF No. 1105].  9 ROA_001679-_001742. At 5:54 p.m.

11   on August 15, 2023, less than two days before the Confirmation Hearing, Debtor

12   submitted the James Decl. [ECF No. 1079]. 8 ROA_001586-_001594. Counsel for

13   McAlary objected to this late presentation of evidence, stating: "I would like to make

14   an oral objection to Mr. Tanner's declaration that was filed two days ago.  I don't

15   believe our stipulation [with] the debtor stipulated that the debtor could include

16   additional evidence. But in addition, I would like to make an oral motion to strike

17   Paragraphs 5, 7, 8, 10, 11, 12, 13, 15, 16 and 17 as containing inadmissible hearsay."

18   Transcript Regarding Hearing Held on 8/17/23 [ECF No. 1105] at 27:15-21.

19   9 ROA_001679-_001742. In ruling in favor of the Debtor, the NVBC stated:

20   "McAlary argues that Paragraphs 5, 7, 8, 10, 11, 12, 13, 15, 16, and 17 of the

21   declaration contain inadmissible hearsay.  No objection is raised, however, to the

22   liquidation analysis attached as Exhibit 1 to the declaration, nor to the financial

23   advisor's testimony in Paragraph 4 that the Amended Plan does not worsen the

24   outcome for creditors."  This is patently incorrect.  McAlary objected to the effort to

25   present additional declaration testimony two days before the hearing, and as such

26   presentation was not permitted by the applicable rules.  Further, McAlary argued

27   extensively that the Debtor's "liquidation analysis" (also presented less than two

28   days before the hearing) was inaccurate.  His counsel, Ms. Cica, pointed to the

Debtor's original disclosure statement's[9] *outright acknowledgement* of the litigation's uncertainty – thereby triggering an inaccurate liquidation analysis. Transcript Regarding Hearing Held on 8/17/23 [ECF No. 1105] at 19:17-22. 9 ROA_001679-_001742. In fact, Debtor admits "'given the large number of uncertainties at this time, including the amount of net proceeds on causes of action, which the creditor trust will ultimately recover, **it is not possible for the debtor to provide any reliable estimate at this time as to the expected ultimate recovery for holders of general unsecured claims**.'" *Id.* (emphasis added). Debtor's own admissions completely eradicate the basis of the Amended Plan's feasibility. Rather, McAlary, and all other Creditors, are left in the dust with only an entirely speculative implementation plan to ponder.

The Court's finding that McAlary failed to offer testimony to rebut the James Decl., which was submitted less than two business days before the Confirmation Hearing, was in error, since (1) the declaration itself was clearly untimely and (2) McAlary was not afforded any notice that evidence would be taken at the Confirmation Hearing (as required by LR 9014). Similarly, the Court's finding that "no request was made to cross-examine the declarant or to have him testify as a live witness"[10] was in error for the same reason. McAlary appropriately objected to the submission of the James Decl. less than two days before the hearing, and the Court neither ruled on that objection nor afforded any opportunity to cross-examine at the Confirmation Hearing. Additionally, the filing was clearly untimely, and failed to afford sufficient time for McAlary to submit controverting evidence. Nevertheless, even the late-filed declaration failed to establish that there were sufficient funds to achieve the Plan effective date. For all of these reasons, it was a clear error for the NVBC to confirm the Amended Plan based upon the James Decl.

---

[9] Disclosure Statement [ECF No. 529]. 3 ROA_000430-_000559.
[10] Memorandum Decision [ECF No. 1120] at 6:12-13. 9 ROA_001743-_001752.

In addition to the foregoing, providing only two business days' notice of the revised "evidence" clearly failed to comply with due process requirements. *See, e.g., In re Beyond.com Corp.,* 289 B.R. 138, 143 (Bankr. N.D. Cal. 2003) (rejecting plan provisions "that dramatically reduce notice to creditors of matters that the drafters of the Bankruptcy Code and Rules considered fundamental to bankruptcy due process").

## VI.

## CONCLUSION

For the reasons stated above, it is respectfully requested that the Confirmation Orders be reversed.

Respectfully submitted this 6th day of November 2023.

**CARLYON CICA CHTD.**

By: /s/ *Candace Carlyon*
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
NATASHA SHARMA, ESQ.
Nevada Bar No. 16320
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
*Counsel for Christopher McAlary*

## STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6

**Appeal Case Number(s): 2:23-cv-01424-GMN, Appeal Reference No. 23-19**

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ x] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:
  Chris McAlary v. Cash Cloud Inc; & Official Committee Of Unsecured Creditors, 23-cv-01580-JAD

**Signature**  _/s/_   _Candace Carlyon_  **Date** November 6, 2023

i

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**
**Appeal Case Number(s): 2:23-cv-01424-GMN, Appeal Reference No. 23-19**

1.      This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)A because, excluding the parts of the document exempted by Fed. R. Bankr. 8015(g), this document does not exceed 30 pages.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font size.

**Signature** _/s/ Candace Carlyon_          **Date** November 6, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of CARLYON CICA CHTD., and that on the 6th day of November, 2023, I caused to be served a true and correct copy of the foregoing, to be served in the following manner:

    X     (ELECTRONIC SERVICE) Pursuant to Rule 5-4 of the Local Rules of Civil Practice of the United States District Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electric Filing automatically generated by that Court's facilities.

        (UNITED STATES MAIL) By deposing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed below at their last-known mailing addresses, on the date above written:

Dated this 6th day of November, 2023.

*/s/ Cristina Robertson*

iii